**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| NEWPAGE CORPORATION, *et al.*, ) | Case No. 11-12804 (KG) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| PIRINATE CONSULTING GROUP, LLC ) | |
| AS LITIGATION TRUSTEE OF THE NP ) | |
| CREDITOR LITIGATION TRUST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Pro. No. 13-52520 (KG) |
| ) | |
| KADANT SOLUTIONS DIVISION, ) | |
| ) | |
| Defendant. ) | **Re: Dkt. Nos. 22, 25** |

**MEMORANDUM OPINION**[1]

The Court is addressing the motion for summary judgment which Kadant Solutions filed, and the cross-motion for partial summary judgment which the Litigation Trustee[2] filed. For the reasons which follow, the Court will grant summary judgment in favor of Kadant Solutions and deny the Litigation Trustee's motion for partial summary judgment.

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[2] The Litigation Trustee is Pirinate Consulting Group, LLC, which the Court appointed on behalf of the NP Creditor Litigation Trust in the Chapter 11 cases of NewPage Corporation and its affiliated reorganized debtors ("NewPage").

## BACKGROUND

NewPage filed its chapter 11 cases on September 7, 2011 (the "Petition Date"). The Court confirmed NewPage's Modified Fourth Amended Joint Chapter 11 Plan (the "Plan") on December 14, 2012, which became effective on December 21, 2012.

The Litigation Trustee filed the instant preference action against Kadant Solutions on November 26, 2013. With its First Amended Complaint, the Litigation Trustee seeks to avoid $765,120.68 in payments to Kadant Solutions. This amount includes $351,709.20 as payment for the "Escanaba Drainage Structures" which Kadant Solutions custom manufactured for the Escanaba Mill (the "EDS"); and $413,411.48 for payments made to Kadant Solutions in the 90 days preceding the Petition Date (the "Remaining Payments"). The Court finds that the EDS payment was a prepayment and therefore not on account of an antecedent debt; and that the Remaining Payments are subject to the ordinary course of business defense, 11 U.S.C. § 547(c)(2).

## FACTS

Kadant Solutions manufactures and designs equipment used in the pulp and paper manufacturing industries. Affidavit of Brad Kruzan, Vice President of Finance of Kadant Solutions, dated June 25, 2015 ("Kruzan Aff."), ¶ 4. Kadant Solutions also provides custom manufacturing of capital equipment and specialized production. Kruzan Aff. ¶ 4. Before the Petition Date, NewPage began negotiating with Kadant Solutions for the EDS which required the custom manufacture of six gravity drainage structures. Kruzan Aff. ¶ 7. In July and August 2011, Kadant Solutions and NewPage

2

continued to negotiate the terms and conditions of the contract for the manufacture of EDS. Kadant Solutions and NewPage reached agreement and Kadant Solutions issued Quotation Number QCEP0281 rev. 4, dated August 10, 2011. Kruzan Aff. ¶ 8 and Exhibit B. Indeed, there is a series of events which are relevant to the dispute, as follows:

| | |
|---|---|
| August 12, 2011 | Kadant Solutions issued Invoice M10593 for $351,709.20. (Kruzan Aff. ¶ 9 and Exhibit C). |
| August 15, 2011 | NewPage issued a revised purchase order (Kruzan Aff., Exhibit D). |
| August 30, 2011 | Kadant Solutions received a check from NewPage in the sum of $361,779.59, which included the $351,709.20 (Kruzan Aff. ¶ 11). |
| September 12, 2011 | Negotiations in late August 2011 led to Kadant Solutions' issuance of Quotation Number QCEP0281 rev. 5, dated September 12, 2011, the Final Contract. (Kruzan Aff. ¶ 12 and Exhibit F). |

Kadant Solutions performed no work on the EDS prior to its receipt of the payment of $351,709.20 and further progress payments. Kruzan Aff. ¶ 13. No manufacturing was performed and there was no shipment of any materials before Kadant Solutions received payment.

There are numerous other payments for standard parts and supplies which the Litigation Trustee seeks to avoid. Kadant Solutions cites to 178 invoices during the preference period, i.e. from June 9, 2011, through September 6, 2011 (the "Preference Period"). The Litigation Trustee cites 180 invoices including those applicable to EDS.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and it is a core proceeding under 28 U.S.C. § 157(b)(2), (A), (B), (F) and (O). Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1409.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence must be viewed in a light most favorable to the non-moving party. *Mitsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 599 (1986). Once the moving party has met its initial burden, the burden shifts to the non-moving party to demonstrate that a genuine issue of material fact exists. *Id.* at 585-86. The "mere existence" of an alleged factual dispute will not defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 247-48 (1986). The non-moving party "must set forth specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Where, as here, there are cross-motions for summary judgment, the Court must ensure that the nonmoving party on each theory has the inferences to be drawn from the underlying facts viewed in the light most favorable to it as the party opposing the motion. *Matsushita*, 475 U.S. at 578-88.

## DISCUSSION

    A.    <u>The EDS Payment</u>

The Court is very much satisfied that the EDS payment of $351,709.20 was a prepayment. The payment therefore was not on an antecedent debt which qualifies as a recoverable preference payment pursuant to 11 U.S.C. § 547. The preference statute, 11 U.S.C. § 547(b), provides in part that:

> (B)    Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property -
>
>     \* \* \*
>
> (2)    for or on account of an antecedent debt owed by the debtor before such transfer was made.

    \* \* \*

Here, negotiations between the parties, i.e., Kadant Solutions and Debtors, resulted in the invoice, dated August 12, 2011, from Kadant Solutions; followed by the August 14, 2011 purchase order from New Page; which led to the payment of $351,709.20 by check, dated August 25, 2011, which Kadant Solutions received on August 30, 2011. Kruzan Aff. ¶¶ 8-12. Then, and only then, did Kadant Solutions begin production of EDS.

The Litigation Trustee argues that Debtors became legally bound to remit the Escanaba Progress Payment before Debtors made the payment. The Litigation Trustee claims that it incurred the debt on the date it became legally bound to pay, before Debtors issued their check on August 25, 2011. The Litigation Trustee further claims

5

that Kadant Solutions issued Escanaba Quotation Rev. 4, Invoice M105093 and the Purchase Order before the Debtors remitted payment and therefore payment was made on account of an antecedent debt. According to the Litigation Trustee, Escanaba Quotation Rev. 5 which Kadant Solutions issued after Debtors remitted payment was not the final contract. Escanaba Quotation Rev. 5 was issued to document modifications to specifications for the project. Again, the Litigation Trustee claims that Debtors were bound to remit payment before payment was made and the payment was therefore made on account of an antecedent debt.

Kadant Solutions asserts that there was no antecedent debt based on its reading of cases and facts surrounding its EDS transaction. The cases make it clear that an "antecedent debt" is incurred prior to the alleged preferential transfer, *Burtch v. Huston* (*In re US Digital, Inc.*), 443 B.R. 22, 36 (Bankr. D. Del. 2011); and that a debt is incurred when the debtor becomes obligated to pay, *Estate Liq. Trust v. Inserts East, Incorporated* (*In re Philadelphia Newspapers, LLC*), 468 B.R. 712, 722 (Bankr. E. D. Pa. 2012). *See also Dots, LLC v. Capstone Media* (*In re Dots, LLC*), 533 B.R. 432, 438 (2015), holding that debt arises when a debtor receives goods or services and not when invoiced. In *AP Services, LLC v. McKesson Corporation* (*In re CRC Parent Corporation*), 2013 WL 2149492 (Bankr. D. Del. May 16, 2013), the court found that because the wire transfers cleared before delivery of the product, the transfers were advance payments. They did not constitute antecedent debt. *Id.* at * 4.

The Court finds that the payment for EDS was a payment in advance and not on account of antecedent debt. As an advance payment, it was not for or on account of an antecedent debt. *In re Hechinger Investment Co. of Delaware, Inc.*, 2004 WL 3113718 (Bankr. D. Del. Dec. 14, 2004). The facts are clear and include that Kadant Solutions was to be paid for the EDS before it began to manufacture the equipment, that EDS required custom manufacture and that Kadant Solutions provided nothing before it received payment. Additionally, pursuant to the "General Terms and Conditions for Contracts and Purchase Orders for Purchase of Equipment," Kruzan Aff., Exhibit F, Appendix C, Debtors had the right to terminate the order for the EDS at anytime and without cause on 10 days' notice to Kadant Solutions. Upon termination, Debtors would be liable only for actual costs up to the contract price. At the time of payment, Debtors could have canceled without any liability since Kadant Solutions had not started to manufacture the EDS.

For the reasons provided, the Court grants summary judgment in favor of Kadant Solutions on the EDS payment and denies the Litigation Trustee's motion for partial summary judgment. Accordingly, the Court is not addressing the other defenses Kadant Solutions asserts and which include, contemporaneous exchange for new value and that the Debtors assumed the contract. For the latter argument, *see In re Kiwi Airlines*, 344 F. 3d 311 (3d Cir. 2003).

B.  The Remaining Payments

The Litigation Trustee is also seeking to avoid what appears to be $413,411.48 in other transfers.[3] Excluding the payment for EDS, Kadant Solutions identified 178 invoices in the preference period, which begins on June 8, 2011 and ends on September 6, 2011 (the "Preference Period").  The Litigation Trustee identified 181 invoices which includes invoices relating to EDS.

Kadant Solutions argues that after excluding the EDS payments, the entire preference claim is subject to the defense that Debtors made the payments, all of them, in the ordinary course of business.  See 11 U.S.C. § 547 (c)(2):

> (c)    The trustee may not avoid under this section a transfer –
>
> \* \* \*
>
> (2)    to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business, or financial affairs if the debtor and the transferee, and such transfer was –
>
> (A)    made in the ordinary course of business of financial affairs of the debtor and the transferee;
>
> (B)    made according to ordinary business terms;
>
> \* \* \*

---

[3] It is unclear to the Court what amount, other than the EDS payment, the Litigation Trustee is seeking.  However, since the Complaint identifies $765,120.68 in preferential transfers and the EDS payment was $351,709.20, the Court believes the Litigation Trustee is seeking the $413,411.48 in other transfers.

The ordinary course of business defense "is designed to encourage creditors to continue to deal with debtors on normal business terms" without concern for a subsequent bankruptcy filing and the possibility of requiring creditors to disgorge what debtors paid them. *Barnhill v. Johnson*, 112 S. Ct. 1386, 1391 (1992); *In re First Jersey Secs., Inc.*, 180 F. 3d 504, 512 (3d Cir. 1999).

In determining whether payments were made in the ordinary course of business, a creditor must show that (1) payment was on account of a debt incurred in the ordinary course of business between the debtor and creditor, (2) payment was made in the ordinary course of business between the debtor and creditor, or (3) payment was made according to ordinary business terms. Those are the statutory prerequisites. 11 U.S.C. § 547 (c)(2).

The first test is satisfied if the debtor - creditor relationship is for ordinary business purposes and is at arm's length. No one suggests otherwise for the Debtors - Kadant Solutions relationship. The third test is also not challenged for applicability to the Debtors and Kadant Solutions.

The second factor, that the transfer was made in the ordinary course of dealings between the debtor and creditor, requires the Court to subjectively inquire into the normal business practices between the debtor and creditor, between Debtors and Kadant Solutions. Thus a court takes account of the length of time the parties have done business, whether the transfer was more than usual, how payment was tendered,

9

whether debtor or creditor took unusual action to pay or collect what was owed, and whether creditor did anything to gain advantage. *See, e.g.*, *Wahoski v. Classic Packaging Company* (*In re Pillowtex Corp.*), 427 B.R. 301, 307 (Bankr. D. Del. 2010).

Here, the only real question raised by the Litigation Trustee in opposition to summary judgment is whether or not the payments were made in a different manner from previous payments outside the Preference Period. The Court must therefore scrutinize the amount, manner and timing of the payments Debtors made to Kadant Solutions to determine if the transfers in question came within the range of normal dealings. *See, e.g.*, *In re Molded Acoustical Products, Inc.*, 18 F. 3d 217 (3d Cir. 1994); *In re Archway Cookies*, 435 B.R. 234 (Bankr. D. Del. 2010).

It is uncontested that Debtors and Kadant Solutions had a long standing relationship before the Preference Period. There is also no evidence of any unusual action which Debtors took to pay debt or that Kadant Solutions took to collect on debt. Therefore, the issue for the Court is timing – what does the history of payments look like when compared with payments during the Preference Period. The following chart shows the payments during the historical period and Preference Period[4]:

---

[4] The Kruzan Affidavit includes information in detail on the invoices and payments exchanged between Debtors and Kadant Solutions. The "historical period" consists of 15 months and includes 1275 invoices and payments for the period from March 9, 2010 to June 9, 2011. The Kruzan Affidavit also includes transfers during the Preference Period.

| ANALYSIS OF KADANT SOLUTIONS DATA IN KRUZAN AFFIDAVIT | | | | | |
|---|---|---|---|---|---|
| **Time Period** | **Average** | **Median** | **Mode** | **Range** | **No. of Invoices** |
| Historical Period (03/09/10 – 06/07/11) All invoices | 70 | 60 | 56 | 56-919 | 1275 |
| Historical Period (03/09/10 – 06/07/11) *Excluding outliers under 13 and over 166 days | 62 | 60 | 56 | 13-166 | 1238 |
| Preference Period (06/08/11 – 09/06/11) | 61 | 60 | 56 | 15-166 | 186 |

The Litigation Trustee also submitted substantial data. *See* Declaration of Michelle E. Cline, dated July 27, 2015 ("Cline Declaration"). The chart Kadant Solutions prepared using the data (excluding EDS payments) is as follows:

| ANALYSIS OF TRUSTEE DATA IN CLINE DECLARATION | | | | | |
|---|---|---|---|---|---|
| **Time Period** | **Average** | **Median** | **Mode** | **Range** | **No. of Invoices** |
| Historical Period (09/09/09 – 06/07/11) | 63 | 57 | 54 | 21-207 | 579 |
| Historical Period (09/09/09 – 06/07/11) *Excluding outliers over 166 days | 63 | 57 | 54 | 21-166 | 577 |
| Preference Period (06/08/11 – 09/06/11) | 53 | 54 | 54 | 12-95 | 178 |
| Preference Period excluding 3 invoices totaling $6,832.85 paid between 12-18 days | 54 | 54 | 54 | 25-95 | 175 |

It is clear from comparing the payments in the historical period and the Preference Period that the payments in both fall within the same range.  Despite the Litigation Trustee's protestations, the facts overwhelming support the finding that there is no deviation in the ordinary course of business between Debtors and Kadant Solutions in the Preference Period.  The average payment, median payment, mode and range of payment are nearly identical in the historical period and Preference Period.  *In re Elrod Holdings*, 426 B.R. 109 (Bankr. D. Del. 2010); *In re American Home*, 476 B.R. 124 (Bankr. D. Del. 2010).  It is not sufficient for the Litigation Trustee to complain that it has not had the opportunity to take full discovery.  More discovery will not affect the payment records.

## CONCLUSION

The Court is granting Kadant Solutions motion for summary judgment and denying the Litigation Trustee's motion for partial summary judgment.  An Order will follow.

Dated: September 30, 2016        _____
                                 KEVIN GROSS, U.S.B.J.