IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>NEWPAGE CORPORATION, et al.,<br><br>Reorganized Debtors. | ) Chapter 11<br>) Bank. No. 11-12804 (KG)<br>) (Jointly Administered)<br>)<br>) |
| PIRINATE CONSULTING GROUP, LLC,<br>AS LITIGATION TRUSTEE OF THE<br>NP CREDITOR LITIGATION TRUST,<br><br>Appellant,<br>v.<br><br>KADANT SOLUTIONS DIVISION,<br><br>Appellee. | ) Adv. No. 13-52520 (KG)<br>)<br>)<br>)<br>) Civ. No. 16-955-SLR<br>)<br>)<br>)<br>)<br>) |

M. Blake Cleary, Esquire, Jaime Luton Chapman, Esquire, and Andrew L. Magaziner, Esquire, of Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware. Counsel for Pirinate Consulting Group, LLC, as Litigation Trustee of the NP Creditor Litigation Trust.

Rachel B. Mersky, Esquire, of Monzack Mersky McLaughlin and Browder, P.A., Wilmington, Delaware; and Janey E. Bostwick, Esquire, of Janet E. Bostwick, P.C., Boston, Massachusetts. Counsel for Kadant Solutions Division.

**MEMORANDUM OPINION**

Dated: July 12, 2017
Wilmington, Delaware

*[signature]*
ROBINSON, Senior District Judge

## I. INTRODUCTION

This appeal arises from a preference action filed by Pirinate Consulting Group, LLC, as trustee ("Trustee") of a creditors' litigation trust created under the confirmed Chapter 11 plan of NewPage Corporation, *et al.* ("NewPage" or "Debtors"). The preference action sought to avoid $765,120.68 in payments made to defendant Kadant Solutions Division ("Kadant") within the ninety days prior to September 7, 2011 ("Petition Date").[1] On September 30, 2016, the bankruptcy court entered a memorandum opinion and order, *Pirinate Consulting Group, LLC v. Kadant Solutions Division,* Adv. No. 13-52530 (KG), 2016 WL 5787237 (Bankr. D. Del. Sept. 30. 2016), granting Kadant's motion for summary judgment and dismissing the adversary proceeding. The bankruptcy court determined that: (i) a $351,709.20 transfer ("EDS payment") was not subject to avoidance because it was a prepayment and not a transfer on account of an antecedent debt as required for avoidance by § 547(b)[2] of the Bankruptcy Code; and (ii) the remaining transfers at issue, totaling $413,411.48, were protected from avoidance by the Bankruptcy Code's ordinary course defense.[3] Trustee appeals the bankruptcy court's decision with respect to the EDS payment on the basis that the bankruptcy court erred in determining that it was not a transfer on account of an antecedent debt.

---

[1] The docket of the adversary proceeding, *Pirinate Consulting Group, LLC v. Kadant Solutions Division,* Adv. No. 13-52530 (KG) (Bankr. D. Del.) is cited herein as "Adv. D.I. ___."
[2] Section 547(b) of the Bankruptcy Code provides, in relevant part:
    (b)    Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
              \* \* \*
    (2)    for or on account of an antecedent debt owed by the debtor before such transfer was made.
11 U.S.C. § 547(b).
[3] *See* 11 U.S.C. § 547(c)(2).

2

## II. BACKGROUND

Kadant manufactures and designs accessory equipment used in the pulp and paper manufacturing industries. (R100)[4] Its business includes: (i) supplying standard parts and supplies on a routine basis; and (ii) custom manufacturing of capital equipment for customers. (*See id.*) Capital equipment orders involve customized equipment built for a customer's specific application or installation, requiring a substantial investment by the customer. (*See id.*) Such orders are separately negotiated and contain significant additional terms and conditions. (R354)

Prior to the Petition Date, Debtors and Kadant entered into negotiations for the custom manufacture of six gravity drainage structures referred to by the parties and bankruptcy court as the Escanaba Mill Structures or "EDS." In connection therewith, the parties executed the "General Terms and Conditions for Contracts and Purchase Orders for Purchase of Equipment" ("General Terms") in May 2010. (R100; R106-22) The General Terms defined "Contract" as "[t]he Purchase Order to which these Terms and Conditions are attached . . . , all documents incorporated by reference under the Purchase Order or under these Terms and Conditions . . . and all exhibits and amendments to all such documents." (R108) The General Terms provided that the Debtors could terminate a purchase order at any time without cause on 10 days' notice to Kadant. (R118) In the event of such a cancellation, Debtors were only liable for actual costs incurred by Kadant (plus normal markups) up to the date of cancellation, not to exceed the contract price.

In July and August 2011, the parties negotiated the terms and conditions of the contract for the manufacture of the EDS, during the course of which Kadant submitted several "revised proposal[s]" for NewPage's review. (*See* R124-55, dated August 10, 2011,

---

[4] The appendix filed in support of Trustee's opening brief (D.I. 9) is cited herein as "R__."

3

titled "Quotation Number QCEP081 rev. 4" (herein, "Revised Quote 4"); R168-98, dated September 12, 2011, titled "Quotation Number QCEP0281 rev. 5" (herein, "Revised Quote 5")) Kadant attached to each of the revised quotes three appendices: (i) a proposed "Mechanical Vibration Warranty" (Appendix A);[5] (ii) proposed "Terms of Payment" requiring prepayment in the amount of 60% of the contract price ("60% with order"), 20% "with Certified Drawings," and the final 20% "prior to shipment" ("payment must be received before the equipment leaves manufacturing plant") (Appendix B); and (iii) the executed General Terms (Appendix C). Regarding the parties' transaction, there appears no dispute that, following continued negotiations in early August, these events occurred:

| | |
|---|---|
| August 10, 2011 | Kadant submitted Revised Quote 4 to NewPage. (R101; R124-55) |
| August 12, 2011 | Kadant issued Invoice M10593 for payment of the 60% due "with order" in the amount of $351,709.20 pursuant to Revised Quote 4 (the "Invoice"). (R102; R157) |
| August 15, 2011 | NewPage issued a revised purchase order regarding Revised Quote 4 (the "Purchase Order"). (R158) |
| August 25, 2011 | NewPage issued check no. 2048460 dated August 25, 2011 to Kadant, which included the $351,709.20 EDS payment. (R102) |
| August 30, 2011 | On or about August 30, 2011, Kadant received check no. 2048460 from NewPage, which included the $351,709.20 EDS payment. (R102; R165) |
| September 7, 2011 | NewPage files for protection under Chapter 11. (B.D.I. 1)[6] |
| September 12, 2011 | Continued negotiations lead to Kadant's issuance of Revised Quote 5. (R102; R168-98) |
| October 2011 | Kadant begins manufacturing the EDS only after the receipt of required payments in September and October 2011. (R355) |
| December 2011 | Kadant shipped the equipment to the Debtors in late December after |

---

[5] The vibration warranty set forth in Appendix A to the final agreement was a key requirement of the EDS project. The goal of the EDS project was to supply six gravity drainage structures that do not cause vibration issues. Appendix A set forth specific criteria for vibration levels. The vibration warranty was a performance guarantee and was required to be met before the Debtors accepted the equipment. (R354-55)

[6] The docket of the Chapter 11 cases, *In re NewPage Corporation, et al.*, Case No. 11-12804 (KG) (Bankr. D. Del.) is cited herein as "B.D.I. __."

4

|  |  |
|---|---|
|  | receiving the final 20% payment. (R103; R355) |
| December 14, 2012 | Debtors confirmed a plan and appointed Trustee. (B.D.I. 2945) |
| 2012 – 2014 | Following the shipment of the equipment, Kadant provided further work and services on the EDS project, including work needed to meet the conditions of the vibration warranty included in the parties' agreement. (R355) |
| May 2014 | NewPage gives final acceptance of the equipment. (R356) |

Trustee filed the preference action on November 26, 2013, and the first amended complaint sought to avoid $765,120.68 in payments made by the Debtors to Kadant, including the $351,709.20 EDS payment received on or about August 30, 2011. Kadant moved for summary judgment. (R80-236) With respect to the EDS payment, Kadant argued that it was not subject to avoidance because it was not on account of an antecedent debt. (R82) Kadant relied on the fact that the EDS payment, which represented an initial payment of 60% of the total price, occurred prior to Kadant beginning any manufacturing work or shipping anything, and that the General Terms allowed the Debtors to terminate the contract on 10 days' notice, in which case they would only be liable for costs. (R335-36) Kadant argued these facts demonstrated that "there was no liability at the time of the [EDS] payment." (R334) In support of its summary judgment motion, Kadant filed the Affidavit of Brad Kruzan, Kadant's Vice President of Finance, which, among other things, set forth the history of the negotiations and transaction. (R99-236) Trustee opposed the motion on the basis that Kadant had improperly equated "antecedent debt" under § 547(b) with an immediate right to payment, and filed a cross-motion for summary judgment. (R23-83) Kadant opposed the cross-motion (R329-57) and filed a further affidavit in support of its opposition (R352-56). Trustee set forth no contradictory evidence and there appears to be

5

no dispute as to the history of the transaction set forth in Kadant's affidavits.[7]

Following oral argument,[8] the bankruptcy court issued the memorandum opinion and order, determining that the EDS payment was a prepayment and not a transfer on account of an antecedent debt,[9] and that the remaining payments were protected by the ordinary course of business defense. (R505, 508, 510) On October 14, 2016, Trustee timely filed a notice of appeal. (D.I. 1)

## III. JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction to review the bankruptcy court's order pursuant to 28 U.S.C. § 158(a). In reviewing a bankruptcy court's grant of summary judgment, the court applies a plenary, or *de novo*, standard of review to legal determinations. *Biase v. Congress Fin. Corp. (In re Tops Appliance City, Inc.)*, 372 F.3d 510, 513 (3d Cir. 2004); *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). Under that standard, courts look to whether the record demonstrates "a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Courts must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor. *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the

---

[7] Trustee filed a declaration in support of its own calculation of potential ordinary course defenses. (R387-430)
[8] *See* R432-487 (transcript of September 8, 2016 oral argument).
[9] Based on its determination that the EDS payment was a prepayment and not subject to avoidance, the bankruptcy court did not address other defenses asserted by Kadant with respect to the EDS payment, which included the defense of contemporaneous exchange for new value under § 547(c)(1) of the Bankruptcy Code and the argument that the Debtors assumed the agreement. (*See* R510)

6

absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 475, 586 n. 10 (1986). A party asserting that a fact cannot be – or alternatively is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). If the moving party offers only speculation and conclusory allegations in support of its motion, its burden of proof is not satisfied. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

7

## IV. ISSUES ON APPEAL

Trustee characterizes the issues on appeal as follows: (i) whether the bankruptcy court erred in holding that an antecedent debt under § 547(b) of the Bankruptcy Code only exists when a debt is due and payable under nonbankruptcy law, as opposed to holding that debts for which there exists a contingent liability under the Bankruptcy Code also constitutes an antecedent debt; and (ii) whether the bankruptcy court, in holding that the EDS payment was not made on account of an antecedent debt because it was not due and owing, erred by failing to apply binding Third Circuit precedent under *JELD-WEN, Inc. v. Van Brunt (In re Grossman's)*, 607 F.3d 114 (3d Cir. 2010), and instead incorrectly applying the overturned "accrual standard" set forth in *Avellino & Bienes v. M. Frenville Co. (In re Frenville Co.)*, 744 F.2d 332 (3d Cir. 1984), *cert. denied*, 469 U.S. 1160 (1985). (*See* D.I. 4)

## V. ANALYSIS

### A. "Antecedent debt"

Section 547 allows the trustee or the debtor-in-possession to avoid certain transactions between a debtor and its creditors that occurred within the ninety days prior to the petition date. *Barnhill v. Johnson*, 503 U.S. 393, 394 (1992). In order to avoid a prepetition preferential transfer of a debtor's interest in property, the plaintiff must show that the transfer was:

    (1)    to or for the benefit of a creditor;
    (2)    **for or on account of an antecedent debt owed by the debtor before such transfer was made**;
    (3)    made while the debtor was insolvent;
    (4)    made –
           (A)    on or within 90 days before the date of the filing of the petition; . . .
    (5)    that enables such creditor to receive more than such creditor would receive if –
           (A)    the case were a case under chapter 7 of this title;

> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (emphasis added). "Unless each and every one of these elements is proven, a transfer is not avoidable as a preference under 11 U.S.C. § 547(b)." *AP Services, LLC v. McKesson Corp. (In re CRC Parent Corp.)*, 2013 WL 2149492, *2 (Bankr. D. Del. May 16, 2013) (quotations and citations omitted). Trustee is required to establish each element by a preponderance of the evidence. *See* 11 U.S.C. § 547(g). Kadant argued that it was entitled to summary judgment with respect to the EDS payment because Trustee could not satisfy the *prima facie* elements required under § 547(b). Kadant relied on the terms of the agreement and the facts set forth in its affidavits to show there was no genuine issue of fact that the EDS payment was a payment in advance and, therefore, not made "on account of an antecedent debt owed by the [Debtors] before such transfer was made" as required under § 547(b)(2).

The Bankruptcy Code does not define "antecedent debt." "Debt" is defined by the Bankruptcy Code as "liability on a claim." 11 U.S.C. § 101(12). A claim is a "right to payment," regardless of whether that right is fixed, contingent, matured, or unsecured. *See* 11 U.S.C. § 101(5). The Third Circuit has said that for a debt to be antecedent, "the debt must have been incurred 'before the transfer was made.'" *First Jersey Sec., Inc.*, 180 F.3d 504, 510 (3d Cir. 1999) (quoting 11 U.S.C. § 547(b)(2)). In order to determine when a debt was incurred – and whether it was "incurred before the transfer was made" – courts look to "when the debtor becomes legally obligated to pay." *In re Philadelphia Newspapers, LLC*, 468 B.R. 712, 722 (Bankr. E.D. Pa. 2012) (internal quotations omitted). "[A]n antecedent debt owed by the debtor occurs when a right to payment arises – even if the claim is not

fixed, liquidated, or matured." *First Jersey*, 180 F.3d at 511. "The right to payment generally arises when the debtor obtains the goods or services." *Id.*

### B. Advance Payments Do Not Satisfy Antecedent Debt

"It is well established that advance payments are *prima facie* not preferences because the transfer from the debtor to the creditor is not for or on account of an antecedent debt." *In re Hechinger Inv. Co. of Del., Inc.*, 2004 WL 3113718, *2 (Bankr. D. Del. Dec. 14, 2004). For example, in *Hechinger*, Universal Forest Products, Inc. ("UFP") supplied Hechinger with treated wood products for sale in Hechinger's home improvement stores. *Id.* at *1. In its chapter 11 proceedings, Hechinger sought to avoid payments made to UFP during the preference period. UFP moved for summary judgment on the basis that certain of the alleged preferential transfers were advance payments for products later shipped to Hechinger. Hechinger conceded that, toward the end of the preference period, it had prepaid for products which it believed it was purchasing on credit. *See id.* at *3. The bankruptcy court granted UFP's motion for summary judgment because these amounts were "paid in advance and therefore . . . not preferential." *Id.*; *see also In re Hechinger Inv. Co. of Del., Inc.*, 489 F.3d 568, 572 (3d Cir. 2007) (noting that payments made prior to the shipment of goods "were advance payments and therefore, **by definition**, not recoverable under § 547 as payments for or on account of an antecedent debt") (emphasis added); *see also CRC Parent*, 2013 WL 2149492, *4 (determining that wire transfer payments always cleared prior to shipment and were advance payments that did not satisfy antecedent debt).

Importantly, the existence of an agreement between the parties for payment in advance does not alter the conclusion that advance payments are not payments on account of antecedent debt. This is true even where goods are shipped or services are provided on an ongoing basis. For example, in *Presidential Airways*, an aviation insurance broker ("RHH") entered into an agreement with Presidential, pursuant to which RHH agreed to

10

obtain aviation insurance for Presidential and set up an installment payment plan between Presidential and various insurance companies. *See In re Presidential Airways, Inc.*, 228 B.R. 594, 596 (Bankr. E.D. Va. 1999). The payment plan required Presidential to make monthly payments to cover both the insurance premiums and a commission to RHH for services rendered. *See id.* Presidential later initiated bankruptcy proceedings and sought to avoid certain payments made to RHH as preferential transfers. RHH argued that the payment plan required payments into a fiduciary account before any debts were due; no creditor existed nor were the payments made on account of an antecedent debt. *See id.* at 597. Conversely, Presidential argued that an antecedent debt for ongoing services is incurred on the date that the contract calls for payment – when payments were "due" under the agreement's payment plan. *See id.* at 598. The court rejected Presidential's argument, finding no antecedent debt where the payments were made in advance, regardless of the agreement. *See id.*

Similarly, in *Vanguard*, a software development company ("AAI") entered into a master services agreement with Vanguard which required payment in advance of each month's estimated charges; at the end of the month, the amount owed would be reconciled with the estimated amount paid at the beginning of the month based on Vanguard's actual service usage, and Vanguard would be billed for the difference or receive a credit. *In re Vanguard Airlines, Inc.*, 295 B.R. 329, 331-32 (Bankr. W.D. Mo. 2003). The parties later amended the master services agreement to require weekly payments equal to 25% of the amounts on the monthly invoices, rather than making monthly payments as it previously had been doing. *Id.* at 332. Following its bankruptcy filing, Vanguard sought to avoid the weekly payments as preference payments made to AAI. Based on the existence of the master services agreement, Vanguard argued that it had a legal obligation to pay the estimated charges for a particular month when it received an invoice at the beginning of that

11

month, and that its payments were made to satisfy antecedent debt in four weekly installments. *Id.* at 334. The bankruptcy court rejected this argument, holding that the debt did not arise at the time of the invoice but rather at the time AAI provided the services it had contracted with Vanguard to provide. *See id.* at 334-35. Payments made in advance of these services, therefore, were not on account of an antecedent debt, regardless of the agreement.

In *Dots*, the debtor and Capstone were parties to a master services agreement for media services, with individual projects set forth in a separate statement of work defining the project and costs and requiring payment in advance. The court found the challenged payments were not made on account of antecedent debt:

> It is evident that Capstone would not carry out its Media Buying/Placement services on Debtors' behalf **until** such services had pre-planned approval and were paid in advance. Indeed, Capstone **could not** make media buys unless it had the funds to do so based on the pre-approved budget sanctioned by the Debtors. It follows, therefore, that Capstone was not entitled to compensation until the agreed upon services under each [statement of work] were performed.

*In re Dots, LLC*, 533 B.R. 432, 439 (Bankr. D.N.J. 2015) (emphasis in original). The court rejected the debtors' argument that an antecedent debt was created pursuant to the master services agreement; although it generally governed the parties' relationship, the statements of work were the critical agreements which dictated the terms of each deal and required payment in advance. *See id.* at 440.

### C. The Bankruptcy Court Applied the Correct Standard

In ruling on Kadant's summary judgment motion, the bankruptcy court framed its analysis with well settled principles, recognizing that an "antecedent debt" is "incurred prior to the alleged preferential transfer" and "a debt is incurred when the debtor becomes obligated to pay." (R509 (citing *In re USDigital, Inc.*, 443 B.R. 22, 36 (Bankr. D. Del. 2011) (antecedent debt is incurred prior to alleged preferential transfer) and *Philadelphia*

12

*Newspapers*, 468 B.R. at 722 (debt is incurred when debtor becomes legally obligated to pay)) The bankruptcy court also noted that an invoice alone does not create an obligation to pay because "a debt arises when a debtor receives goods or services and not when invoiced." (R509 (citing *Dots*, 533 B.R. at 438)) The bankruptcy court further observed that an advance payment is not a payment on account of an antecedent debt. (R509 (citing *CRC Parent*, 2013 WL 2149492, *4 (wire transfers that cleared before delivery of product were advance payments and were not payments on account of antecedent debt))

The bankruptcy court concluded that the EDS payment was "an advance payment" and "was not for or on account of an antecedent debt." (R510 (citing *Hechinger*, 2004 WL 3113718, at *3) In reaching this conclusion, the bankruptcy court considered the terms of the agreement and the uncontroverted facts set forth in Kadant's affidavits to determine when the Debtors became legally obligated to pay and whether there was an enforceable obligation at the time of the EDS payment. *See Philadelphia Newspapers*, 468 B.R. at 722. The bankruptcy court observed that "a series of events [were] relevant to the dispute," including that further "[n]egotiations in late August 2011" led to the issuance of "the Final Contract," Revised Quote 5, after the EDS payment. (R506) The bankruptcy court further found that the EDS required custom manufacturing (R510); that Kadant "was to be paid for the EDS before it began to manufacture the equipment" (*id.*); that Kadant performed no work prior to its receipt of the EDS payment and further progress payments in October 2011 (R506); and that Kadant "provided nothing before it received [the EDS] payment" (R510). Additionally, the bankruptcy court observed that, pursuant to the General Terms, the "Debtors had the right to terminate the order for the EDS at any time and without cause on 10 days' notice to Kadant" and, at the time of payment, "could have cancelled without any liability since [Kadant] had not started to manufacture the EDS." (*Id.*) Based on the

foregoing, the bankruptcy court determined that the EDS payment was "an advance payment" and "was not for or on account of an antecedent debt." (*Id.*)

To determine whether a debt was "incurred before the transfer was made," the bankruptcy court properly considered "when the debtor [became] legally obligated to pay," and determined that at the time of the EDS payment there was no legal obligation. Kadant presented unrefuted evidence establishing that the parties' agreement required prepayment and that the EDS payment was made prior to Kadant beginning manufacture or providing any services. Because the contract required prepayment, no right to payment was triggered until after Kadant began work. The bankruptcy court's analysis was consistent with Third Circuit law, and summary judgment was appropriate. Trustee failed to identify any genuine issue of material fact with respect to the EDS payment as a payment in advance, and advance payments are "by definition" not recoverable under § 547 as payments for or on account of an antecedent debt. *Hechinger*, 489 F.3d at 572; *see also CRC Parent Corp.*, 2013 WL 2149492, at *4. It is undisputed that the EDS payment was made, not only in advance of any services being rendered by Kadant, but before the exact specifications for EDS had even been finalized by the parties. (R102; R168-98) Trustee failed to come forward with specific facts showing that there is a genuine issue for trial with respect to the prepayment. Summary judgment as to the EDS payment may be affirmed on this basis alone.

### D. Trustee's Additional Arguments Lack Merit

Rather than address the prepayment, Trustee raises several arguments which are not compelling. Trustee disputes the bankruptcy court's reference to Revised Quote 5 as the "Final Contract," arguing that an agreement existed at the time of the EDS payment, and that the agreement created both a contingent claim and an antecedent debt. (*See* D.I. 8 at 11; D.I. 13 at 2, 9) Trustee argues that the agreement was comprised of the General

14

Terms, Revised Quote 4, the Invoice, and the Purchase Order – which constituted Debtors' acceptance of Kadant's offer – and that together, these documents represented a "mutual exchange of promises." (*See* D.I. 8 at 17-18; D.I. 13 at 9-10) According to Trustee, Revised Quote 5 was not the "Final Contract" and simply reflected additional adjustments to specifications. (*See id.*) Kadant argues that the bankruptcy court properly determined that, based on the uncontroverted evidence, no binding contract was created until after the EDS payment was made, when Revised Quote 5 was issued; where there is no binding contract, there is no antecedent debt. (D.I. 11 at 16)[10] Even assuming that Trustee is correct that there was a binding agreement at the time of the EDS payment – in the form General Terms, Revised Quote 4, the Invoice, and the Purchase Order – those documents are clear that the parties agreed to **payment in advance**.

Trustee devotes a significant portion of its briefing to the argument that the existence of any agreement between the parties gave rise to a contingent claim, without regard to the terms of the agreement or the relationship between the parties. Trustee argues that "a contract creates a claim at the moment of its execution and is therefore an antecedent debt." (D.I. 8 at 11) The essence of Trustee's argument is that any agreement – including an agreement requiring prepayment before goods and services are provided – creates a contingent claim and therefore an antecedent debt. As set forth in the cases cited above, entry into an agreement that requires prepayment does not alone create an antecedent debt or change the result that a prepayment is by definition not a payment on account of an antecedent debt. The court agrees with Kadant that, under this logic, there could never be

---

[10] Kadant further argues the facts of this case are similar to *USDigital*. In *USDigital*, the bankruptcy court determined that, although the parties had executed a term sheet, there was no legal obligation until the subsequent purchase agreement was executed. *USDigital*, 443 B.R. at 38. As a result, there was no antecedent debt for a payment made after the term sheet but before the purchase agreement. *See id.*

15

an advance payment because there would always be an antecedent debt. Trustee cites no authority requiring such an analysis nor any policy that would support such a result.

Trustee's argument also relies heavily on the fact that "debt" and "claim" have been held to be synonymous. Trustee argues that, while it is true that "a debt is incurred when the debtor becomes legally obligated to pay," the principal question under this standard is "what sort of legal obligation is required to create a debt for purposes of section 547." (*See* D.I. 8 at 9 (citing *In re Enron Corp.*, 357 B.R. 32, 40 (Bankr. S.D.N.Y. 2006)) According to Trustee, "the proper focus of inquiry in determining whether the [EDS payment] was made on account of an antecedent debt is whether Kadant held a claim as defined under the Bankruptcy Code" and that "the plain language of the Bankruptcy Code gives the term 'claim' the broadest possible meaning to encompass all of the debtor's legal obligations, no matter how remote or contingent." (*See id.* at 9)

And, indeed, the term "debt" means "liability on a claim." 11 U.S.C. § 101(12). For purposes of determining whether a debt is a claim, § 101(5) (which defines "claim") should be consulted to decide whether the debt or demand gives rise to a right of payment and can qualify under that section. COLLIER ON BANKRUPTCY, ¶ 101.12. "If a claim exists under that broad definition, a debt also exists." *Id.* "[A]s debt is defined as a liability on a claim, it is coextensive with the definition of a claim and both are construed broadly." *First Jersey*, 180 F.3d at 510.

Trustee cites case law observing that "[w]henever a claim arises, a debt necessarily arises as well, and the only distinction between the terms is the party to which it applies." (*See* D.I. 8 at 1 (quoting *Enron*, 357 B.R. at 37)) Trustee urges the court to take this concept two steps further and hold that, because the definition of debt is tied to the definition of claim, any contingent claim is also, as a matter of law, an antecedent debt. (*See* D.I. 8 at 2 (arguing, with respect to its alleged contingent claim, that "on account of an

16

antecedent debt" means "on account of an antecedent claim")) The authorities cited by Trustee do not support such a conclusion.

Finally, Trustee argues that, in reaching its conclusion, the bankruptcy court improperly relied on the fact that the agreement required payment before any work was performed and that, until work began, Kadant could not have asserted a claim for monetary damages. (See D.I. 8 at 3) Trustee argues that, by focusing on what rights Kadant and the Debtors may have had under the contract – rights which are governed by state law – and failing to consider whether, as a result of the contract, Kadant had a "claim" against the Debtors as broadly defined in the Bankruptcy Code, the bankruptcy court impermissibly applied *Frenville*'s "accrual" standard, which the Third Circuit overruled in *Grossman's*, and that the bankruptcy court's holding is contrary to the "obvious trend interpreting 'antecedent debt' broadly and rejecting the proposition that debt is only incurred as it becomes due." (*See id.* at 9-11) Conversely, Kadant argues that the bankruptcy court did not apply *Frenville* and that Trustee's argument ignores the bankruptcy court's specific findings and conclusions. (*See* D.I. 11 at 22)

In *Frenville*, the Third Circuit considered the appropriate standard for determining when a "claim" arose for purposes of the automatic stay.[11] *See Frenville*, 744 F.2d at 333. The Third Circuit subsequently summarized *Frenville* as holding that "the existence of a valid claim depends on: (1) whether the claimant possessed a right to payment; and (2) when that right arose" as determined by reference to relevant non-bankruptcy law. *See Grossman's*, 744 F.2d at 119 (quoting *Kilbarr Corp. v. Gen. Servs. Admin., Office of Supply & Servs. (In re Remington Rand Corp.)*, 836 F.2d 825, 830 (3d Cir. 1988)). The *Frenville*

---

[11] With certain exemptions, the automatic stay provision of § 362(a) applies to any "proceeding against the debtor that was **or could have been commenced** before the commencement of the case . . . or to recover a claim against the debtor that **arose before** the commencement of the case. . ." *See* 11 U.S.C. § 362(a) (emphasis added).

17

test for determining when a claim arises has been referred to as the "accrual test." *See Grossman's*, 744 F.2d at 119. *Frenville* was later overruled in *Grossman's*, a case in which the Third Circuit rejected the argument that an asbestos tort claim does not arise until a cause of action accrues under state law. *See Grossman's*, 607 F.3d at 126. The Third Circuit overruled *Frenville* on the basis that "it imposes too narrow an interpretation of 'claim' under the Bankruptcy Code" and "does not account for the fact that a 'claim' can exist under the Code before a right to payment exists under state law." *Id.* at 121.

*Frenville* and *Grossman's* did not address advance payments nor did they discuss the standard for determining when a debt is incurred for the purposes of establishing an antecedent debt. Trustee argues, however, that the bankruptcy court's analysis disregarded *Grossman's* interpretation of when a claim arises and led to its incorrect conclusion that an antecedent debt was not incurred. According to the Trustee, under *Grossman's*, the bankruptcy court should have determined that Kadant had a claim against the Debtors, as defined by the Bankruptcy Code – not state law – and that such a contingent claim necessarily constituted an antecedent debt.

In determining whether an antecedent debt existed at the time of the EDS payment, the bankruptcy court did not disregard the definition of "claim" discussed in *Grossman's* nor did it include any consideration of whether there was a breach or whether a cause of action accrued under state law. Rather the bankruptcy court looked to terms of the agreement and the unrefuted facts to determine when a right to payment arose. The bankruptcy court determined that payment in advance was required under the agreement and there was no right to payment at the time of the EDS payment as Kadant had not performed any services. The bankruptcy court focused on when obligations between the parties arose under the terms of the agreement – not when an action accrued under state law. The bankruptcy court's analysis did not deviate from *Grossman's* holding that a claim under the Bankruptcy

18

Code may exist before an action accrues under state law. As the Third Circuit in *Grossman's* recognized, "the determination of when a party has a claim . . . seems to hinge on the nature of the claim and the posture of the case." *See id.* at 126 n.11 (internal citations omitted).

Based on the terms of the agreement and undisputed facts, the EDS payment was a payment in advance, and Trustee cannot sustain its burden in establishing that the EDS payment was for or on account of an antecedent debt owed by the Debtors before the payment was made. Trustee failed to present a genuine issue of material fact that the EDS payment was not a payment in advance, and summary judgment was appropriate.

## VI. CONCLUSION

For the foregoing reasons, the bankruptcy court's opinion and order are affirmed, and Trustee's appeal is denied. An appropriate order shall issue.